## Chicago & Northwestern Railway Co. v. George K. Bunker.

1. RAILROADS—*Duty as to Cattle upon the Track.*—It is not the duty of railroad companies to anticipate the presence of cattle upon their tracks, and be on the constant watch to discover them, but the duty to avoid injury arises only after discovery of their presence. If, after the servants of the company discover animals upon the track they can, by the exercise of due and proper care, avoid doing them injury, and fail to do so, the company will be liable.

2. SAME—*Competency of Testimony as to Rate of Speed.*—In an action for killing cattle, where the declaration charged that the train was run at a high and dangerous rate of speed, and the evidence introduced by the plaintiff tended to prove that the train was running at a high and unusual rate of speed, it is error for the court to refuse to permit the company to prove by the engineer in charge of the engine which did the injury, the usual rate of speed at which the train was run, and that

he could not with safety to his train and passengers, stop the same in time to avoid the injury after discovering the danger.

·3. SAME—*No Restraint upon the Speed of Trains.*—The law imposes no restraint upon a railroad company as to the rate of speed its trains may run when not prohibited by municipal regulations, provided always it is reasonably safe to the passengers being transported.

4. INSTRUCTIONS—*Duty to Look and Listen on Approaching Railroad Tracks.*—An instruction which undertakes to tell the jury what is the duty of a person in charge of cattle on approaching a railroad track, as to looking and listening for approaching trains, invades the province of the jury and has been frequently condemned.

**Action on the Case,** to recover damages for the killing of cattle by an engine and train of cars. Trial in the County Court of McHenry County; the Hon. O. H. GILMORE, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed April 11, 1899.

D. T. SMILEY, attorney for appellant.

One approaching a railroad crossing is bound to know that it is a place of danger, and he must have that regard of the sights and sounds of warning of an approaching train that a man of ordinary caution, under like circumstances, would have; if he permits himself to become absorbed in thought about other matters, and oblivious of his personal surroundings, he does so at his peril. C., R. I. & P. Ry. Co. v. Fitzsimmons, 40 Ill. App. 360–363; C. & N. W. Ry. Co. v. Hatch, 79 Ill. 137; C., B. & Q. Ry. Co. v. Van Patten, 64 Ill. 510.

When not prohibited by municipal regulations, it is apprehended the company may adopt such rate of speed as it shall deem advisable, provided, always, it is reasonably safe to the passengers being transported. It will be subject to no liability for the rate adopted, if the company is not otherwise at fault. C., B. & Q. R. R. Co. v. Lee, Adm'x, 68 Ill. 576–582; W., St. L. & P. Ry. Co. v. Hicks, 13 Ill. App. 407; C. & A. R. R. Co. v. Robinson, 9 Ill. App. 89; C. & A. R. R. Co. v. Pearson, 71 Ill. App. 622.

C. P. BARNES and V. S. LUMLEY, attorneys for appellee, contended that the law is well settled in this State, that

even as to persons or stock trespassing upon the railroad company's right of way, if injury can be avoided by the use of reasonable care after the danger is discovered, such care must be exercised, or the company will be liable for damages caused by the want of it. And such is the law, even though the injury is not wantonly nor willfully inflicted. C. & N. W. Ry. Co. v. Smedley, 65 Ill. App. 647.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case to recover damages for the killing of four cows, belonging to appellee, by an engine and train of cars on appellant's railroad, at a farm crossing on appellee's land, on May 13, 1897, between Woodstock and Ridgefield in said McHenry county.

The declaration contained five counts, the first of which averred due care on the part of plaintiff, and negligence of appellant's servants in failing to exercise ordinary care to observe, discover or see the cows of the plaintiff being driven along and upon said farm crossing, etc. The second count avers due care on the part of the plaintiff, and that "the defendant failed, omitted and neglected to exercise ordinary care to avoid injuring the cows, and by reason of such failure the defendant willfully, wantonly, negligently and recklessly ran the said engine and train of cars," etc. The third count, after averring due care on the part of plaintiff, charges that "the defendant failed, neglected and omitted to exercise ordinary care by ringing a bell or blowing a whistle, or in any way or manner notifying or warning the agent or servant of the plaintiff of the approach of said engine and train of cars," whereby, etc.

The fourth count charges that "the train of cars was negligently, carelessly, recklessly, willfully and wantonly run at a high and dangerous rate of speed, and in consequence thereof," etc. The fifth count charges that "the defendant failed and omitted to exercise ordinary care to avoid injuring the four cows of the plaintiff," etc.

The principal charges of negligence relied upon at the trial, were running the train at a high and dangerous rate

of speed, and failing to stop it in time to avoid the injury. There was a trial by jury, resulting in a verdict and judgment for appellee, for $160, and appellant prosecutes this appeal.

The facts appearing in the evidence are that on May 13, 1897, appellee was the owner of a farm in McHenry county, through which appellant's railroad ran, and also was the owner of a herd of cows, the farm and cows being leased to James Robinson, who was in possession and control thereof; that a part of this land lay on each side of appellant's right of way, the several parts being connected by a farm crossing over the railroad track; that the cows in question were driven over this crossing from the south side every morning to a pasture on the north side of the track, and they were driven back each evening, and it was while so being driven back on the evening of the 13th of May that the four cows were killed. We deem it unnecessary to detail all the evidence in relation to the killing, but a careful examination thereof has led us to the conclusion that it was at least a close question upon the facts as to whether the young man in charge of the cows and driving them across the track at the time they were killed, was in the exercise of ordinary care in so doing. The train which struck the cows was a regular passenger train, and substantially on time, and certainly it was the duty of the person in charge of the cows to be on the lookout for such a train and not to drive them upon the track and take the chances of a collision about the time when the train was due.

The witness who was driving the cows, testified that he supposed from having heard a train a short time before, that the passenger train had gone by, but he went immediately from the station to the pasture, and could have ascertained the fact with certainty, by a very slight exercise of diligence. It is true this question of due care was one of fact for the jury, but in such a state of the evidence it was important, not only that the instructions should have been accurate, but also that the court's rulings upon the admission or rejection of testimony should be free from error.

We think the second instruction for plaintiff should not have been given. It was as follows:

" If the jury believe from the evidence that the person or persons in charge of the engine in question, by the exercise of ordinary care, might have stopped the train in question in time to have avoided injuring the cows in question, and that the cows were injured by such failure to exercise ordinary care, and that they were the property of the plaintiff, then the jury should find the issues joined in favor of the plaintiff."

While the instruction substantially directs a verdict for appellee, it entirely ignored the question of due care on the part of plaintiff, or the person in charge of the cows, and in the absence of proof of willful and intentional killing, which certainly nowhere appears in the evidence, it was clearly erroneous. Then, again, the instruction ignores the question as to whether appellant's servants, by the exercise of due care, could have stopped the train after discovering the danger, in time to have avoided the injury. Whatever may have formerly been the rule in this State, it is not now the duty of railroad companies to anticipate the presence of cattle or stock upon their tracks and be on the constant watch to discover them, but the duty to avoid injury arises only after discovery of their presence. If, after the servants of the company see animals upon the track, they can, by exercise of due and proper care, avoid doing them injury, and fail to do so, the company will be liable. (I. C. R. R. Co. v. Noble, 142 Ill. 578.) The instruction under discussion was erroneous in failing to recognize this proposition.

Again, the evidence introduced by appellee tended to prove that the train was running at a high and unusual rate of speed, but the court would not permit appellant to prove by the engineer in charge of the engine which did the injury the usual rate of speed at which the train was run. The declaration charged that the train was run at a high and dangerous rate of speed, and it was certainly competent for appellant in rebuttal of this charge to show, if it could, that the train was only running at its usual and ordinary rate of speed. We hold this ruling of the court was erroneous.

We also hold it was error for the court to refuse the testimony of the engineer to the effect that he could not, with safety to his train and passengers, stop the same in time to avoid the injury after discovering the danger. While the evidence shows that the track was comparatively straight for a mile or so before reaching the crossing, yet the engineer's view of the cattle before they actually got upon the track was just as much obstructed, as was that of the young man driving the cows as to seeing the train. Other evidence as to the ability of the engineer to stop the train in time to avoid the injury, after discovering the danger, was improperly ruled out, although some of it seems to have been admitted later. We think all this evidence was proper and should have been freely admitted.

Complaint is made as to the refusal of the court to give certain instructions asked by appellant. We think the first instruction was properly refused because it ignores the question of the ability of the engineer to stop the train in time to avoid the injury after discovering the danger. The second undertakes to tell the jury what was the duty of the young man in charge of the cows as to looking and listening to ascertain the approach of the train. Instructions of this character invade the province of the jury and have been frequently condemned. There was no error in refusing it.

The third instruction would have informed the jury, if given, that the law of this State imposes no restraint upon a railroad company as to the rate of speed its trains may run when not prohibited by municipal regulations, provided always it is reasonably safe to the passengers being transported. This instruction was in accordance with the law as laid down by the Supreme Court in C., B. & Q. R. R. Co. v. Lee, Adm'x, etc., 68 Ill. 576, and should have been given.

In C. & A. R. R. Co. v. Pearson, 71 Ill. App. 622, we held such an instruction proper and that it was error to refuse it.

For the errors indicated the judgment must be reversed and the cause remanded.