FRANK ADAMCYZK *et al.*, Plaintiffs-Appellants, v. THE FOREST PRE-SERVE DISTRICT OF COOK COUNTY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—0962

Opinion filed December 30, 1986.

Carrane, Freifeld & Uruba, of Chicago (James E. Pancratz, of counsel), for appellants.

Tenney & Bentley, of Chicago (David L. Coghlan, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs appeal the denial of their motion to vacate an order dismissing their damage claims against the Forest Preserve District of Cook County (hereinafter referred to as appellee). The circuit court judge denied the motion to vacate because it was presented to the court for a hearing much later than 90 days after it was first filed, in violation of Rule 2.3 of the circuit court of Cook County.

Plaintiffs filed the present class action on February 2, 1982, on behalf of property owners who suffered flood damage as a result of the overflow of Tinley Creek on June 13, 1981. Named as defendants

were the village of Crestwood; its mayor, Chester Stranczek (neither of whom is a party to this appeal); and appellee. The original complaint contained six counts, only three of which were directed against appellee. In count II, plaintiffs alleged that appellee had agreed to allow the village of Crestwood to construct a levee on appellee's property that interfered with the natural watercourse of Tinley Creek. Count II charged that this agreement, together with appellee's failure to study the impact of the levee and appellee's failure to warn plaintiffs, proximately caused flood damage to plaintiffs and reduced the value of their property. Plaintiffs prayed for $3 million in damages from appellee plus costs and attorney fees and an order requiring appellee to remove the levee or to take "such precautions as are necessary to prevent future flooding." In count V, plaintiffs charged that the construction and the manner in which appellee maintained the levee constituted a nuisance. This count contained a prayer for $3 million to compensate for the decrease in value and loss of use and enjoyment of plaintiffs' property and for an order restraining maintenance of the nuisance. Finally, count VI of the original complaint sought an order restraining the continuing nuisance and an award of $3 million, without referring to any specific defendant.

Section 3—106 of the Local Governmental and Governmental Tort Immunity Act provides that in the absence of wilful and wanton negligence:

> "[n]either a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used as a park, playground or open area for recreational purposes." (Ill. Rev. Stat. 1985, ch. 85, par. 3—106.)

This immunity is qualified by section 9—103(c) of the same Act (Ill. Rev. Stat. 1985, ch. 85, par. 9—103(c)), which provides that a local public entity waives immunity from a particular form of liability by obtaining insurance to cover that liability. See *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659; *Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525.

On October 29, 1982, appellee filed a motion to dismiss to which it attached an affidavit executed by appellee's comptroller, James Gaugahn, who asserted therein that appellee had no insurance coverage for any of the wrongful or negligent acts or omissions that were alleged in plaintiff's complaint. On November 19, 1982, the circuit court issued an order stating:

> "Forest Preserve's Section 48 motion to dismiss based on Section 3—106 of the Tort Immunity Act is granted as to the issue

of money damages, although the parties may seek discovery regarding the issuance of insurance policies to the Forest Preserve District of Cook County."

After the circuit court's order, the damage claims against the village and its mayor and other claims against appellee remained pending. Nearly four months later, on March 9, 1983, on appellee's motion, the circuit court certified its November 19 order for immediate appeal as provided in Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)). On March 17, 1983, plaintiffs filed a motion to vacate in which they stated that appellee was insured and named the company that had purportedly issued the policy.

On August 2, 1983, plaintiffs filed their first amended complaint, which dropped all damage claims against appellee. Of the two counts directed against appellee, count II stated that plaintiffs had filed a notice of claim "in compliance with Chapter 85, Section 102," and prayed for an order requiring appellee to remove the levee or take other precautions necessary to prevent future flooding. Count V asserted that the levee constituted a nuisance and asked for an order that the levee be appropriately maintained. Appellee filed an answer to this first amended complaint on March 27, 1984. Plaintiffs' original counsel withdrew from the case on May 2, 1984, and their present attorney substituted on July 18, 1984. On January 8, 1985, plaintiffs filed their second amended complaint, which reasserted a $3 million damage claim against appellee plus a $750,000 claim against all defendants, including appellee, based on plaintiffs' asserted emotional distress.

On January 9, 1985, appellee's counsel filed a notice to appear for the purpose of presenting to the court plaintiffs' two-year-old motion to vacate the modified dismissal order of March 9, 1983. At the hearing on the motion, plaintiffs' counsel argued that Mr. Gaugahn, appellee's comptroller, admitted in a deposition, in contradiction to the statements in his affidavit, that he never handled or reviewed any of appellee's insurance policies prior to the institution of appellee's self-insurance program and that appellee's insurance director handled all insurance matters. Plaintiffs' counsel also argued that Gaugahn had testified that he did not know the effective dates of appellee's insurance policies, the type of coverage involved, or the meaning of the terms "underwriting" and "general liability." No transcript of Gaugahn's deposition had yet been prepared, but appellee's counsel countered that Gaugahn was present at the hearing and could be sworn to attest to the truth of the matters contained in his affidavit. The court did not deem this necessary and ruled from the bench:

"This motion, the motion that I believe that counsel is trying to argue today, is a motion that was filed on March 17, 1983, and to my view expired by reason of this court's rules ninety days thereafter. That means that this matter is dead and finished as of June 17, 1983. Thereafter, no matter—no matter was brought to the court.

The matter, or this case, I should say, was called for status at least a half dozen times after June 17, 1983, and no action on any motion to vacate was suggested or taken at any of those subsequent status calls."

An order was entered on March 19, 1985, denying plaintiffs' motion to vacate, but it was modified the next day to state, "[t]his order is entered *nunc pro tunc* effective as of March 6, 1985, and that said Order is final and appealable with no just reason for delay of enforcement or appeal." The remainder of the case was transferred to the law division on April 6, 1985. Plaintiffs filed their notice of appeal on April 8, 1985.

■■■ An amendment to an unverified pleading which is complete in itself and does not refer to or adopt a prior pleading constitutes an abandonment of the prior pleading. (*Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 462 N.E.2d 774.) By filing an amended complaint, a plaintiff waives any right to object to the trial court's rulings on the original complaint, including orders dismissing claims contained in the earlier complaint. *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125.

After the court dismissed the damage claims against appellee and while plaintiffs' motion to vacate was still pending, on August 2, 1983, plaintiffs filed a first amended complaint, which made no reference to the original complaint and which asserted no damage claims against appellee. This constituted abandonment of such claims for damages and withdrawal of the March 19, 1983, motion to vacate. Subsequently, on September 18, 1984, plaintiffs obtained leave to file a second amended complaint, which they filed on January 8, 1985. In this complaint, plaintiffs once again prayed for $3 million in damages against appellee. As far as the record shows, this complaint was still pending at the time this appeal was taken.

■■ We need comment no further in this court on either the validity or the status of the plaintiffs' efforts to reassert in their second amended complaint the previously dismissed and abandoned damage claims against appellee. We find it incongruous, however, that at the hearing on March 6, 1985, the parties asked the trial court to rule on a motion to vacate a two-year-old order dismissing portions of a com-

plaint that was no longer relevant to the proceedings. There is simply nothing for us to review. *Kievman v. Edward Hospital* (1984), 122 Ill. App. 3d 187, 460 N.E.2d 901.

Accordingly, we dismiss this appeal for lack of jurisdiction.

Appeal dismissed.

BILANDIC, P.J., and HARTMAN, J., concur.